Connie R. **LIVELSBERGER** and Russell L. Livelsberger, Appellants,

v.

Joy C. **KREIDER,** Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 13, 1999.
Filed Dec. 16, 1999.

Thomas P. Lang, York, for appellants.

George C. Werner, Jr., Lancaster, for appellee.

Before POPOVICH, ORIE MELVIN and HESTER, JJ.

HESTER, J.:

¶ 1 Connie and Russell Livelsberger appeal after a jury failed to award them damages in this personal injury action. We affirm.

¶ 2 This matter arises from an automobile accident that occurred on December 18, 1993. Mrs. Livelsberger was a front seat passenger in a vehicle being operated by Mr. Livelsberger, who was not injured in the accident. Mr. Livelsberger was making a left-hand turn when he was struck from the rear by a car being operated by Appellee, Joy C. Kreider. This action was instituted for injuries allegedly sustained by Mrs. Livelsberger in the accident as well as her husband's loss of consortium. The matter proceeded to a jury trial. On December 2, 1998, the jury concluded that the accident had not caused Mrs. Livelsberger's claimed damages and made no award to Appellants. This appeal followed denial of post-trial motions and entry of judgment.

¶ 3 Appellants' first allegation on appeal is that the verdict is so contrary to the weight of the evidence that she is entitled to a new trial. She relies upon *Neison v. Hines*, 539 Pa. 516, 653 A.2d 634 (1995), and similar cases holding that the plaintiff is entitled to a new trial when the jury fails to award damages and there is *uncontroverted* evidence that the plaintiff suffered injuries as a result of defendant's negligence.

¶ 4 Initially, we examine our standard of review. In *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985), our Supreme Court explained that an appellate court reviews the denial of a motion for a new trial in the same manner as the grant of a new trial. It is settled that the grant or denial of a new trial rests in the discretion of the trial court. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994).

It is well settled that in reviewing an order to grant a new trial our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Gouse v. Cassel*, 532 Pa. 197, 205, 615 A.2d 331, 335 (1992); *Spang & Co. v. U.S. Steel Corp.*, 519 Pa. 14, 24, 545 A.2d 861, 865 (1988). A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it "shocks one's sense of justice." *Kiser v. Schulte*, 538 Pa. 219, 225–27, 648 A.2d 1, 4 (1994); *Burrell v. Philadelphia Elec. Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970).

*Neison, supra*, 539 Pa. at 518–20, 653 A.2d at 636.

¶ 5 Next, we evaluate Appellants' attempt to equate this case with that of *Neison, supra*. We find the attempt unpersuasive. Specifically, Appellee did controvert Appellants' evidence that Mrs. Livelsberger suffered injuries in the accident and did present expert testimony that Mrs. Livelsberger's complaints were not caused by the accident but rather, were present before the accident and were the result of a mood disorder.

¶ 6 The evidence presented at trial, in the light most favorable to Appellee, as verdict winner, follows. Although Appellants described the collision as severe, a photograph of their vehicle after the accident raised questions as to the claimed extent of damage and the severity of the impact. Further, although both Appellants testified that Mrs. Livelsberger lost consciousness at the scene, Mrs. Livelsberger's earlier statements raised questions

as to the veracity of that claim. No health care provider, including ambulance personnel, witnessed the unconsciousness.

¶ 7 Mrs. Livelsberger was taken from the accident scene to St. Joseph Hospital where various diagnostic tests were performed. All tests were normal, and Mrs. Livelsberger promptly was released. She then began treatment with her family physician for headaches, musculoskeletal pain, and forgetfulness. At trial, Appellants did not present any testimony from Mrs. Livelsberger's treating family physician. They did present testimony from Dr. Bret A. Daniels, who first saw Mrs. Livelsberger two and one-half years after the motor vehicle accident. Dr. Daniels testified on direct examination that with respect to Mrs. Livelsberger's physical symptoms of neuralgia, Mrs. Livelsberger has done "well," that she has been able to control her symptoms, and that her physical symptoms have not been a major problem for her. Deposition Bret A. Daniels, 9/21/98, at 10, 11.

¶ 8 Meanwhile, Appellee strenuously contested that any of Mrs. Livelsberger's complaints were caused by the accident. Dr. Perry A. Eagle, an orthopedic surgeon, examined Mrs. Livelsberger and reviewed her medical records. He indicated that Mrs. Livelsberger "*may have*" sustained a cervical sprain and nothing else. Deposition Perry A. Eagle, 9/29/98, at 26. However, he never conceded that she actually *had* suffered such an injury. In fact, Dr. Eagle stated that Mrs. Livelsberger presented only with subjective symptoms and that whether the symptoms were related to the motor vehicle accident were established solely by Mrs. Livelsberger. Dr. Eagle explained that objective testing did *not* document any injury from the motor vehicle accident.

¶ 9 Moreover, Appellee introduced into evidence Mrs. Livelsberger's medical records from before the motor vehicle accident. These records revealed that *prior* to the accident, Mrs. Livelsberger had a history of physical complaints, including headache, neck pain, and low back pain.

¶ 10 Finally, Appellee presented the testimony of Dr. Abram Hostetter, a psychiatrist, who examined Mrs. Livelsberger on two occasions and who reviewed Mrs. Livelsberger's extensive medical history. Dr. Hostetter opined that Mrs. Livelsberger had *not* suffered a closed-head injury from the accident. Dr. Hostetter also testified that Mrs. Livelsberger had a mood disorder that caused her complaints and that the mood disorder was *not* related to the motor vehicle accident.

¶ 11 Thus, contrary to Appellants' contention on appeal, Appellee's medical expert did *not* concede that she had suffered "*some* injury" in the accident. Appellants' brief at 9. Indeed, Appellee presented substantial evidence that *all* of Mrs. Livelsberger's complaints predated the accident and were unrelated to it. We are aware that Appellants presented countervailing expert testimony on this issue. However, the factfinder resolves conflicts in the evidence.

¶ 12 Now, we examine cases where a new trial has been awarded due to a jury's failure to award damages where, as here, liability is established. This situation has engendered substantial appellate decisions. In *Neison, supra,* the trial court had awarded a plaintiff in a personal injury action a new trial. Plaintiff's vehicle had been struck in the rear by defendant's vehicle, and even though the defendant stipulated as to liability, the jury awarded no damages on the ground that the defendant's negligence had not caused the plaintiff harm. We reversed the award of a new trial, but the Supreme Court reversed us.

¶ 13 Noting that the grant or denial of a new trial was subject to an abuse of discretion or error of law standard on appeal, our Supreme Court also observed that a new trial should be granted where the verdict is so contrary to the weight of the evidence as to shock one's sense of justice. It concluded that the verdict in that case

did just that for the following reason: the *uncontroverted* evidence was that plaintiff had suffered at least *some* injuries in the accident.

¶ 14 Our Supreme Court acknowledged that the jury is free to believe all, part, or none of the evidence, but it noted that this principle is tempered by the notion that the verdict cannot "be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial." *Neison, supra,* 539 Pa. at 520–22, 653 A.2d at 637.

¶ 15 The Court stated, "The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Id.* The Court then examined the uncontroverted evidence, which established that the plaintiff had suffered some injury in the accident. Specifically, the plaintiff's car was struck with a significant amount of force, and the plaintiff was treated in the emergency room. Two days later, she returned to the emergency room and was informed that her pain was a normal consequence of the accident and was prescribed pain relievers. The plaintiff then consulted a specialist, who diagnosed posttraumatic myofascitis pain syndrome of the neck and scapula, cervical sprain syndrome, and a herniated disk. The plaintiff started to treat with a chiropractor, who also diagnosed cervical sprain and fibromyalgia. The defendant's expert conceded the existence of sprain from the accident. Based on the fact that the defense had failed to produce any evidence to refute the existence of injury from the accident and that common sense dictated that the accident at issue at the very least caused pain, the Court concluded that the trial court correctly concluded that the jury's verdict bore no rational relationship to the evidence presented at trial.

¶ 16 Similarly, in *Rozanc v. Urbany,* 444 Pa.Super. 645, 664 A.2d 619 (1995), the defendant struck the rear of the plaintiff's car. Furthermore, the expert witness for the defense in *Rozanc* admitted that the plaintiff had suffered pain due to a muscle sprain sustained in the accident. The jury failed to award any damages, and the trial court held that the plaintiff had waived the right to request a new trial due to her failure to object to the verdict when it was read.

¶ 17 After concluding that the trial court erred in finding waiver, we ruled that the admission by the defense expert witness that the plaintiff suffered an injury in the accident, coupled with her description of her injuries, mandated that some award of damages be made. We concluded that the jury's failure to award damages was contrary to the evidence produced at trial and that its disbelief that injuries occurred, when that fact was admitted by the defense expert witness, shocked our conscience and required grant of a new trial. *Accord Hixson v. Barlow,* 723 A.2d 716, 717 (Pa.Super.1999), aff'd. on these grounds, overruled on different grounds, *Mano v. Madden,* 738 A.2d 493 (Pa.Super.1999) (we upheld award of new trial by trial court where liability was conceded and both defense and plaintiff's expert witnesses agreed that plaintiff, who had preexisting medical condition, suffered distinct injuries as a result of the accident); *Craft v. Hetherly,* 700 A.2d 520 (Pa.Super.1997) (trial court did not abuse discretion in determining that award of no damages was against weight of the evidence where defense and plaintiff's expert witnesses agreed plaintiff was injured in accident and only extent of injuries was contested and where plaintiff was traveling at thirty-five miles per hour when accident occurred); *Lewis v. Evans,* 456 Pa.Super. 285, 690 A.2d 291 (1997) (we affirmed trial court's grant of a new trial; defense and plaintiff's expert witnesses agreed that plaintiff suffered injuries from accident, and only extent of the injuries were contested).

¶ 18 Herein, of course, the trial court declined to grant a new trial. Equally important, there was no concession by the expert witnesses for the defense that Mrs. Livelsberger had suffered damages from the accident. Dr. Eagle opined that Mrs. Livelsberger may have suffered some injury but then specifically continued by refuting the existence of such injury. He indicated that injury was not established by any testing and that the relation of the injury to the accident could be verified only by a belief in Mrs. Livelsberger's testimony. Mrs. Livelsberger's credibility was for the jury to determine. *Neison, supra.* Finally, Dr. Hostetter unequivocally related all of Mrs. Livelsberger's complaints to a mood disorder that preceded and was unrelated to the motor vehicle accident. Thus, he specifically refuted that any of her injuries were caused by the accident. Clearly, this case is distinguishable from the above cases, and there is no basis upon which to disturb the trial court's decision.

¶ 19 Appellants also contend that it was error for the trial court to instruct the jury on legal causation since causation was not an issue at trial, and the trial court initially stated that it would not give an instruction on causation. Initially, we note that causation of the injuries *was* an issue at trial. Furthermore, the trial court stated that Appellants waived any objection to the charge as given by failing to object at trial to the instruction. Appellee similarly argues that this claim is waived due to Appellants' failure to object to the instruction on causation. Appellants concede that they did not object to the charge as given.[1] Appellants' brief at 18. In order to preserve an issue for appellate review, the complaining party must make a timely, specific objection at trial *and* raise the claim in post-trial motions. *National Un-*

*ion Fire Insurance Co. v. Gateway Motels,* 551 Pa. 407, 710 A.2d 1127 (1998). Appellants' failure to object to the trial court's instructions thereby providing the opportunity for the court to correct any error results in their failure to preserve this issue for appellate review.

¶ 20 Judgment affirmed.

---

1. Appellants contend that their failure to object to the instructions is excused by the fact that they did not see the verdict slip that went out with the jury during deliberations. Appellants' brief at 18. We do not see the relation between the two facts. Appellants are object-ing to the jury charge, not the verdict slip; therefore, the fact that they did not see the latter is not relevant to the fact that they did not object to the former. They do not contend that they were not present when the jury instructions were given.