# Buchman v. Colusso

C.P. of Lehigh County, no 97-C-2876.

*Daniel E. Kleiner,* for plaintiffs.
*James F. Swartz III,* for defendant.

GARDNER, *P.J.,* March 8, 2000—This matter is before the court on plaintiffs' motion for post-trial relief filed March 29, 1999. Immediately after oral argument held March 8, 2000 we dictated the within bench opinion in open court on the record and in the presence of counsel for defendant.[1] For the reasons expressed below, we deny plaintiffs' motion for post-trial relief.

This is a personal injury action in which plaintiff Ellwood A. Buchman seeks compensation for injuries suffered in an automobile accident on December 12, 1996. Wife, plaintiff Betty Buchman, brought a loss of consortium action.

At the beginning of the trial, counsel and the parties entered into the following stipulation:

"On December 12, 1997 in the late morning hours, the three vehicles involved in this accident were each proceeding westbound on Route 222. At the traffic light at the intersection of Route 222 and Route 100 in Trexlertown, Lehigh County, Pennsylvania, defendant

---

1. Because of a prior commitment, plaintiffs' counsel asked to be excused from the announcing of the bench opinion, and waived his right to be present.

was unable to bring his vehicle to a stop and struck the rear of the vehicle in front of him, which was operated by Craig Swartzendruber, which in turn struck the rear of plaintiff's vehicle, which was in front of the Swartzendruber vehicle.

"Defendant agrees that his conduct was negligent, but does not concede that his negligence caused the injuries alleged by plaintiffs.

"The parties do not contend that Craig Swartzendruber's conduct contributed in any way to causing the accident described."

On March 16 and 17, 1999, a jury trial was held. This was a trial de novo as a result of an appeal by defendant from an arbitration award in favor of plaintiffs in the amount of $25,000.

At the conclusion of the jury trial, the jury completed its verdict slip on March 17, 1999, after deliberations. The verdict slip, which was pre-approved by counsel for the parties, contained three questions. Question one stated, "In this case defendant, Angelo A. Colusso, has conceded that he was negligent in the operation of his automobile on December 12, 1996. Was the negligence of defendant a substantial factor in bringing about harm to plaintiff, Ellwood A. Buchman?" The jury was then required to answer "yes" or "no."

Question two invited the jury to "state the amount of compensatory damages, if any, sustained by plaintiff Ellwood A. Buchman as a result of defendant's negligence." Question three invited the jury to "state the amount of damages, if any, sustained by the wife plaintiff Betty Buchman as a result of the accident for loss of consortium."

The jury answered question number one "no." As a result of the negative response to question one, the jury, appropriately, did not answer questions two and three. Accordingly, on March 17, 1999, the undersigned trial judge molded the verdict as a finding for the defendant and against the plaintiffs. Because of an error in the wording of the original molded verdict, the undersigned entered an amended molded verdict on October 29, 1999 also finding for the defendant and against the plaintiffs.

On March 29, 1999, plaintiffs filed a timely motion for post-trial relief. In their post-trial motion, plaintiffs argued that a verdict awarding no damages to them was contrary to the weight of the evidence and contrary to the law. For the following reasons, we disagree.

According to the middle driver in this three-car, rear-end collision, Craig Swartzendruber, he was struck in the rear by defendant's vehicle. He described the initial impact as "a slight jolt" but "enough to push me into the truck in front of me," operated by plaintiff Ellwood Buchman. He also testified, "It didn't push my body back and forth." Mr. Swartzendruber was driving a two-door Ford Escort sedan. He testified that his impact with plaintiff's vehicle "was not as great as the impact in my rear."

Mr. Swartzendruber testified that he could not tell whether or not his vehicle sustained any damage. He indicated that he had some scratches on both the front bumper and rear bumper of his vehicle but that he had previously sustained some damage to each end of his vehicle. He was unable to tell whether any of the damage was caused by the within accident. Mr. Swartzendruber testified that he had no injuries. On cross-examination he testified that the first hit was "a good bump."

Plaintiff Ellwood Buchman contended that he experienced pain in his neck and back as a result of the accident. He was able to drive his vehicle away from the scene. Later that day he visited his family doctor, Dennis Moss D.O. He treated with Dr. Moss for four to five weeks, and then was discharged.

Approximately one month later, plaintiffs contend that Mr. Buchman began to experience pain in his neck which went down his arm and into his left hand. Dr. Moss sent Mr. Buchman to Dr. Zev Elias, a neurosurgeon, in February 1997, because Mr. Buchman's condition had not improved. Dr. Elias prescribed medication for Mr. Buchman and sent him to physical therapy. After two visits, on May 8, 1997 and June 9, 1997, with the physical therapist, plaintiff obtained a CAT scan. It revealed no fractures but revealed degenerative arthritic changes in the cervical area of plaintiff's spine.

Plaintiff also sought treatment from Dr. James Weiss, an orthopedic surgeon, to determine whether he would be amenable to surgery. Dr. Weiss did not feel that plaintiff was a candidate for surgery. Dr. Weiss recommended that plaintiff undergo a magnetic resonance imaging test (MRI), which is a specialized x-ray, to try to determine the cause of his pain. However, because Mr. Buchman is claustrophobic, he was unable to complete the MRI test.

Dr. Weiss concluded that plaintiff suffered from cervical spondylosis which correlates with his degenerative arthritic changes.

Dr. Weiss also concluded that plaintiff's arthritic condition was aggravated by the motor vehicle accident.

The only expert who testified for plaintiff was Dr. Moss. Neither Dr. Elias nor Dr. Weiss testified.

Nearly two years after the accident, on September 2, 1998, plaintiff was examined by defendant's expert neurologist, Peter J. Barbour M.D.

Dr. Barbour concluded that plaintiff had a number of preexisting conditions including prostatic cancer, a hernia repair, emphysema, coronary artery disease, and a prior injury to his left shoulder.

Dr. Barbour concluded that plaintiff also had a prior arthritic condition in his neck and a separate arthritic condition in his back.

Dr. Barbour concluded that plaintiff had near full range of motion in his neck, and movement of his neck in all directions did not elicit pain. Dr. Barbour did not find any specific pattern of abnormality that would lead him to believe that there was a specific nerve injury. His examination looked normal.

Dr. Barbour diagnosed plaintiff with dyesthesia, which he described as a "funny feeling." He attributed this condition to the plaintiff's preexisting arthritic condition. He found "little objective evidence of neurologic disfunction at this time." He also opined that plaintiff embellished most of the complaints in his examination, making assessment difficult.

Dr. Barbour attributed plaintiff's complaints to degenerative joint changes at the cervical spine. On cross-examination he admitted it was "conceivable that the motor vehicle accident could have led to compromising the C-8 root. However, I found no clear imaging study demonstrating a C-8 root compromise."

Dr. Barbour concluded that plaintiff's complaints were "largely subjective" and that he could not objectively quantify any of those complaints.

Dr. Barbour also diagnosed an injury to the ulnar nerve at the elbow. He testified, "I don't see how the motor vehicle accident that day and the mechanism of the injuries described to me would injure the ulnar nerve at the elbow."

Plaintiffs rely on appellate decisions which grant new trials where a jury awarded no money damages for personal injuries allegedly resulting from an automobile accident. Defendant relies on appellate decisions holding the contrary in similar circumstances. For the reasons expressed below, we find the cases relied upon by plaintiffs to be distinguishable, and the cases relied upon by defendant to be on point.

Defendant relies, in part, upon *Livelsberger v. Kreider,* 743 A.2d 494 (Pa. Super. 1999). This case is on point. The case arises from an automobile accident where plaintiff Russell Livelsberger was struck from the rear by a vehicle operated by defendant Joy Kreider while Mr. Livelsberger was making a left-hand turn. The jury concluded that the accident had not caused injuries to plaintiff Connie Livelsberger, a front-seat passenger in her husband's car, and made no award to her.

Defendant presented evidence that Mrs. Livelsberger's complaints were present before the accident. A photograph of their vehicle after the accident raised questions as to the claimed extent of damage and the severity of the impact. Mrs. Livelsberger was treated and released at a hospital after the accident. All tests were normal. She then began treatment with her family physician for headaches, musculoskeletal pain and forgetfulness.

Plaintiffs' expert first saw Mrs. Livelsberger two and one-half years after the accident and testified that she

had done "well," had been able to control her symptoms and that her symptoms had not been a major problem for her.

Defendant's expert orthopedic surgeon testified that Mrs. Livelsberger "may have" sustained a cervical sprain and nothing else. However, he never conceded that she actually had suffered such an injury. He testified that objective testing did not document any injury from the motor vehicle accident or any of plaintiff's subjective complaints. The medical records indicated that plaintiff had a history of physical complaints including headache, neck pain and low-back pain prior to the accident.

Even though defendant in the *Livelsberger* case stipulated as to liability, the jury awarded no damages on the ground that defendant's negligence had not caused the plaintiff harm.

The Superior Court of Pennsylvania in *Livelsberger* stated that "the jury is free to believe all, part, or none of the evidence. . . . '[The] jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.' " 743 A.2d at 497.

Because defendant's expert did not concede that Mrs. Livelsberger had suffered damages from the accident and because Mrs. Livelsberger's credibility was for the jury to determine, and because defendant's expert unequivocally related all of her complaints to a condition that preceded and was unrelated to the motor vehicle accident, the Superior Court affirmed the trial judge's decision upholding the jury verdict.

Similarly, defendant relies upon *Holland v. Zelnick,* 329 Pa. Super. 469, 478 A.2d 885 (1984). In *Holland,*

plaintiff's vehicle was struck in the rear by defendant's vehicle while stopped at a traffic control device. Plaintiff alleged various injuries to her neck area. Defendant's expert medical witness noted that neither he nor any of the physicians who had treated plaintiff found any objective evidence of pain. His opinion was that the accident did not cause plaintiff to have the pain of which she complained. He testified that her pain was subjective and was brought on by the litigation. Plaintiff also admitted that she had suffered an injury to her neck in another automobile accident nine months before the present accident. The evidence at trial indicated that the accident involved in the lawsuit consisted of a mere "thump" or "bump."

The jury in *Holland* returned a verdict finding defendant negligent but concluding that defendant's negligence did not bring about plaintiff's injuries, and awarded plaintiff no damages. The trial court denied plaintiff's motion for a new trial limited to the issue of damages.

The Superior Court in *Holland* ruled that,

"Simply put, the jury rejected the testimony of plaintiff's expert medical witnesses and accepted the testimony of defendant's expert. The jury simply did not believe that the headaches and other severe pain described by plaintiff and her parents at her trial were caused by defendant's negligent action in bumping plaintiff's vehicle. Thus, the jury found that defendant's negligence was not the proximate cause of plaintiff's complaints and the failure of it to find proximate cause was fatal to plaintiff's claim." 329 Pa. Super. 474, 478 A.2d at 887.

Plaintiff in *Holland* argued that because defendant's expert medical witness admitted that a collision from the

rear can cause soft tissue injury to the cervical area and that plaintiff might very well have suffered such an injury, that the jury, having found defendant negligent, was required to award her something. The Superior Court found, however, that the issues as to whether plaintiff was really suffering any pain and whether any such pain was caused by defendant's conduct was for the jury. The Superior Court found that the jury was not required to award plaintiff any amount, as it obviously believed that any injury plaintiff suffered in the accident was insignificant. 329 Pa. Super. at 475, 478 A.2d at 888.

Plaintiff in the instant case relies upon *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995) and *Hawley v. Donahoo,* 416 Pa. Super. 469, 611 A.2d 311 (1992). We agree with defendant that both of these cases are distinguishable and inapplicable.

In *Neison,* plaintiff was stopped to make a right-hand turn into a market. As plaintiff waited with her right-hand turn signal on, she was struck from behind by a pickup truck driven by defendant. The impact was so severe that it caused plaintiff's head to be thrown backward, shattering the rear window of her two-seat sports car. She was treated at the emergency room for a lump on her head and pain resulting from the accident and then released. She was diagnosed with a cervical strain. The force of the impact was so severe that plaintiff's car was described as having been "wiped out" and looking like "an accordion." Her car was struck with such force that the glasses which plaintiff was wearing prior to the accident were found by a volunteer fireman on the trunk of the vehicle. The force of the collision caused the trunk to crack and split.

The jury in *Neison* awarded plaintiff no damages for pain and suffering desite the fact that defendant admitted liability for the accident.

Defendant's expert in *Neison* was an orthopedic surgeon who examined plaintiff two years after the accident. He opined that plaintiff sustained a neck sprain and shoulder blade sprain in the accident, that these injuries usually take three-to-five months to heal, and that plaintiff was healed when he examined her.

In sustaining post-verdict motions, the trial judge in *Neison* found that the award of no damages to plaintiff "shocked the conscience of the court" given the nature and amount of evidence presented. The trial court determined that the defense was "that the injuries lasted a brief period of time, not that there were no injuries or pain and suffering." *Id.* at 520, 653 A.2d at 637.

Although the jury is free to believe all, some or none of the testimony presented by a witness, the verdict must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial. "The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." 539 Pa. at 521, 653 A.2d at 637.

The Superior Court agreed with the trial court that, under the circumstances of *Neison,* the verdict was so disproportionate to the uncontested evidence as to defy common sense and logic. Accordingly, a new trial was granted on the issue of damages.

Plaintiff also relies on *Hawley v. Donahoo, supra.* In that case, defendant conceded liability in an automobile accident with plaintiff. Defendant also conceded that

plaintiff suffered a compression fracture of the L-3 vertebrae as a result of the accident. However, because plaintiff had a prior history of back injuries, the extent of the damage caused by the instant injury was contested.

Defendant asserted that the fractured vertebrae was a minor injury which healed, in most, at six weeks, and that any pain plaintiff was presently suffering was a result of a preexisting condition. Defendant presented no witnesses, expert or otherwise. Plaintiff presented the testimony of himself, his wife, his employer and two of his physicians.

After the jury awarded plaintiff zero damages, the trial court denied plaintiff's post-trial motion. The Superior Court reversed, citing the general rule that victims must be compensated for all those losses caused by the negligence of another. The court reasoned that the existence of the fractured vertebrae was not questioned by defendant on cross-examination and, therefore, the jury's refusal to believe in the existence of this injury was unwarranted. Moreover, in closing argument, defense counsel recognized the existence of some pain in plaintiff as a result of the accident for a period of four-to-six weeks until it healed. Accordingly, the case was remanded for a new trial. *Hawley,* 416 Pa. Super. at 472, 611 A.2d at 312-13.

To reconcile the above opinions, the appellate courts have stated that if the accident is severe and objective injuries are either conceded or uncontested, the jury errs in awarding no damages. This is not the situation in the instant case.

However, where the impact of the accident is slight, plaintiff's injuries are subjective, there is no objective

evidence of such injuries, defendant's witnesses and attorney do not concede those injuries, and there are pre-existing conditions to explain the subjective complaints, then the jury verdict of no damages is appropriate and will be sustained. The jury may find that certain minor injuries result from "transient rub of life and living, a momentary stab of fear and pain, or neither." *Hawley*, 416 Pa. Super. at 473, 611 A.2d at 313. There are other, more serious injuries to which human experience teaches there is accompanying pain. These include the broken bone, the stretched muscle, twist of the skeletal system, and injury to a nerve or organ or their function. Such injuries are compensable. *Id.*

The evidence in the within case, including plaintiff's preexisting arthritic condition, plaintiff's complaint of pain in the low-back approximately one month before the accident, and the relatively light impact in this accident, together with the lack of any objective evidence of injury, enabled the instant jury to reject plaintiff's subjective complaints of pain, to believe defendant's expert and reject plaintiff's expert, and to find that any pain resulting from this accident was nothing more than a transient rub of life and living, and, therefore, not compensable.

Accordingly, we deny and dismiss plaintiffs' post-verdict motion.

## ORDER

Now, March 8, 2000, upon consideration of plaintiffs' motion for post-trial relief filed March 26, 1999; upon consideration of the briefs of the parties; after oral argument held this date; and for the reasons expressed in the accompanying bench opinion, we deny and dismiss plaintiffs' motion for post-trial relief.