653 A.2d 634

**Louise Brand NEISON, Appellant,**

v.

**Laura B. HINES, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1994.

Decided Jan. 24, 1995.

Kenneth J. Yablonski, Yablonski, Costello, Leckie Chaban, Frank D. Mangone, for appellant.

Robert J. Grimm, Phillips, Faldowski & McCloskey, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This is an appeal from an order and memorandum decision of the Superior Court reversing an order of the Court of Common Pleas of Washington County granting appellant Louise B. Neison a new trial in her civil action against appellee Laura B. Hines. Neison was granted a new trial after the jury returned a verdict in favor of Hines, and awarded Neison no damages for pain and suffering from injuries she sustained in an automobile accident caused by Hines.

The sole issue presented for our review is whether the trial court abused its discretion in awarding Neison a new trial on grounds that the jury's failure to award damages for pain and suffering "shocked its conscience." We find no abuse of discretion and, therefore, reinstate the order of the Court of Common Pleas of Washington County.

On March 24, 1989, Neison was driving on Route 18 in Washington County, and had stopped to make a right turn into Richey's Market in South Franklin Township, Washington County when she paused to permit another automobile into the intersection. As Neison waited with her right turn signal on, she was struck from behind by Hines' pickup truck. The impact caused Neison's head to be thrown backward, shattering the rear window of her two seat sports car.

Neison was taken to the emergency room at Washington Hospital for treatment of a lump on her head and pain resulting from the accident. At the hospital, she was treated

for head trauma and released. When, two days later, Neison awakened with pain in her neck and right shoulder, she returned to the emergency room, and was informed by the treating physician that the pain she was experiencing was not unusual. He prescribed pain relievers, and advised application of moist heat to the injured area.

On March 31, 1989, Neison consulted Dr. John K.S. Lee, an orthopedic specialist, for continuing pain from her injuries. Dr. Lee diagnosed cervical sprain, and imposed lifting restrictions, prescribed pain medication, and recommended a home exercise program to strengthen the injured soft tissue. Several months after her initial visit with Dr. Lee, Neison visited Dr. Andrew Lucas, a chiropractor, who began treating her concurrently with Dr. Lee. Dr. Lucas also diagnosed cervical strain, and implemented a regimen of regular treatment. Throughout her treatment, Neison continued to work at her job as a physical education and health teacher although in a reduced supervisory capacity.

At trial, Hines admitted liability for the accident. The only issue for the jury's determination was the amount Neison was entitled to for pain and suffering as a result of her injuries. Neison offered the testimony of Doctors Lee and Lucas who both opined that the injuries Ms. Neison suffered were directly caused by the automobile accident. The only evidence offered by Hines was the testimony of Dr. William Mitchell, an orthopedic surgeon who examined Neison two years after the accident. Dr. Mitchell opined at trial that Neison had sustained a neck sprain and a shoulder blade sprain. He testified that these injuries were healed when he examined her, and that healing in this type of injury usually takes three to five months.

The jury returned a verdict in favor of Hines, awarding no damages to Neison. Neison successfully filed post-trial motions seeking a new trial on the basis that the jury verdict was contrary to the instructions of the court and/or was contrary to the evidence, and Hines appealed to the Superior Court which reversed. We granted allocatur to determine if the

Superior Court's decision was in conflict with our decision in *Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988).

It is well settled that in reviewing an order to grant a new trial our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Gouse v. Cassel*, 532 Pa. 197, 205, 615 A.2d 331, 335 (1992); *Spang & Co. v. U.S. Steel Corp.*, 519 Pa. 14, 24, 545 A.2d 861, 865 (1988). A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it "shocks one's sense of justice." *Kiser v. Schulte*, 538 Pa. 219, 226, 648 A.2d 1, 4 (1994); *Burrell v. Philadelphia Elec. Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). Here the trial court specifically found that the award of no damages to Ms. Neison "shocked the conscience of the court" given the nature and amount of evidence presented. The court determined that Ms. Hines defense was "that the injuries lasted a brief period of time, not that there were no injuries or pain and suffering." *Neison v. Hines*, No. 90–5396, Slip. op. at 3 (Court of Common Pleas of Washington Co. Aug. 17, 1992). We have thoroughly reviewed the record, and cannot conclude that the trial court abused its discretion or committed an error of law in awarding a new trial.

Ms. Hines argues that the Superior Court should be upheld because that court properly recognized that it is within the province of the jury to assess the worth of testimony, which it may then accept or reject. *See Elza v. Chovan*, 396 Pa. 112, 115, 152 A.2d 238, 240 (1959) (citing *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A.2d 816 (1953)). We agree that the jury is free to believe all, some, or none of the testimony presented by a witness. *Gaita v. Pamula*, 385 Pa. 171, 174–75, 122 A.2d 63, 63 (1956); *Algeo v. Pittsburgh Rys. Co.*, 202 Pa.Super. 548, 552, 198 A.2d 415, 416–17 (1964). However, this rule is tempered by the requirement that the verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial. *Elza*, 396 Pa. at 114, 152 A.2d

at 240; *Slaseman v. Myers,* 309 Pa.Super. 537, 541, 455 A.2d 1213, 1215 (1983). The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.

This was, in essence, our holding in *Kiser.* There the plaintiff presented expert opinion that damages from the death of the decedent would be from $11,862.50 to $18,980.00 for loss of services and from $571,659.29 to $792,352.15 for net economic loss. This was the only testimony on the issue of damages. On cross-examination, the expert conceded that the net economic loss might be as low as $232,400.50 using a different set of variables for the calculations. After hearing this unrebutted evidence on damages, the jury awarded the plaintiff $25,000.00. We remanded the case for a new trial, holding that the award of damages "shocked the conscience" as it bore no relation to the uncontroverted testimony presented at trial. We found that the plaintiff, as a matter of law, was entitled to both wrongful death damages for loss of services the deceased would have rendered to the family, and survival damages for the loss to the decedent's estate from the tort. We concluded that in light of the expert testimony placing the amount of damages at a minimum of $232,400.50, the jury's verdict of $25,000.00, "[did] not bear any rational relationship to the uncontroverted testimony presented by [the expert]." *Kiser,* 538 Pa. at 230, 648 A.2d at 6 (1994). Instead, we found that "the jury totally disregarded the only evidence presented on the question of damages and settled on a somewhat capricious and inadequate amount of $25,000.00." *Id.*

In the instant case, uncontroverted evidence establishes that Neison was involved in a violent automobile accident caused by Hines, and due to her negligence, which was conceded at trial. The accident caused Ms. Neison's head to shatter the rear window of the car. Reproduced Record at 255a. The impact produced trauma in the form of a large lump on the back of Neison's head. *Id.* at 249a. As a result of the collision, the rear end of Ms. Neison's car had been "wiped

out" and the car looked like "an accordion." *Id.* at 253a. Her car was struck with such force that the glasses which Neison was wearing prior to the accident were found by a volunteer firemen on the trunk of the vehicle. *Id.* at 250a. In fact, the force of the collision caused the trunk to crack and split. *Id.* at 254. The record also shows that Ms. Neison went immediately to the hospital for treatment of the head injury. *Id.* at 255a. She returned two days later complaining of neck and shoulder pain, and was told that the pain was a natural result of the type of injury that she had sustained. *Id.* at 259–260a. Because of her continuing pain, she consulted a specialist, Dr. Lee, *id.* at 261–62a, who, after examination diagnosed her as having post-traumatic myofascitis pain syndrome in the neck and scapula, cervical sprain syndrome, and a herniated disk. *Id.* at 58a. Dr. Lucas also testified that he examined Neison, and that she suffered from fibromyalgia, or inflammation of the muscle tissue, and cervical strain. *Id.* at 125a. He then opined that her condition was directly caused by her automobile accident. *Id.* The defendant's own expert, Dr. Mitchell, testified that Ms. Neison "exhibited a diagnosis of a healed neck sprain and a healed scapular or shoulder blade sprain." *Id.* at 207a. He further testified that recovery from soft tissue damage such as Ms. Neison's usually occurs in three to five months. *Id.* Thus, the uncontested evidence amply demonstrates that Ms. Neison was involved in a violent automobile accident and suffered from soft tissue injuries, a cervical sprain, and a herniated disk.

In light of this uncontroverted evidence, we cannot find that the trial court abused its discretion in ordering a new trial. Common sense dictates that a collision of this severity caused by the negligence of another would lead to severe and painful injuries, although the evidence offered at trial left room for disagreement as to whether the pain resulting from Ms. Neison's injuries was as severe as she claimed or whether the accident was in fact causative.[1] However, the jury's decision

1. For example, as discussed *supra,* the defense presented the testimony of Doctor Mitchell that the type of injuries from which Ms. Neison suffered normally heal in three to five weeks. We find that the jury

to find for Hines and award no damages for pain and suffering bears no rational relationship to the evidence produced at trial. The jury's decision to disbelieve all the evidence presented during the trial defies common sense and is indeed shocking.

■ We find that the conclusion of the trial court is in accord with the applicable caselaw on the subject of compensable pain. As a general proposition, victims must be compensated for all that they suffer from the tort of another. *Boggavarapu v. Ponist*, 518 Pa. 162, 167, 542 A.2d 516, 518 (1988) (citing *Spangler v. Helm's New York–Pittsburgh Motor Exp.*, 396 Pa. 482, 153 A.2d 490 (1959)). The trial court, citing our decision in *Boggavarapu*, found that the injury in the instant case was of the type with which pain is naturally associated. In *Boggavarapu*, we held that "there are injuries to which human experience teaches there is accompanying pain." *Boggavarapu*, 518 Pa. at 167, 542 A.2d at 518. We found that these obvious injuries included: "the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or other function, and all the consequences of any injury traceable among medical science and common experience as sources of pain and suffering." *Id.* We also held in *Boggavarapu* that "[p]ain may be subjective, and if believed, is compensable." *Id.* We found that a jury could not disregard evidence of subjective pain, but was "not obliged to believe that every injury causes pain or the pain alleged." *Id.* In the instant case, Neison argues that her injuries are objective injuries that human experience teaches are naturally accompanied by pain. In contrast, Hines contends that the reported pain is subjective in nature and, therefore, the jury was entitled as a matter of law to disbelieve that Neison suffered from the pain she alleged. Our review of caselaw dealing with subjective pain causes us to agree with Ms. Neison.

could also have reasonably believed that the injuries recurred due to Ms. Neison's strenuous activities in the year following the accident including lifting a volleyball net (R.R. at 163a), lifting logs and a heavy container block (R.R. at 165a) and lifting a heavy carpet (R.R. at 175a).

In *Boggavarapu,* the plaintiff was bitten by his neighbor's dog. He received treatment at the emergency room of a local hospital where he was given a band-aid and two tetanus shots. Alleged that a tetanus shot caused injury to his sciatic nerve, the plaintiff sued the hospital and doctors for pain, suffering, and loss of consortium. After trial, the jury awarded only $42.50, the cost of the emergency room treatment, as damages. The trial judge ordered a new trial because the award did not include compensation for pain and suffering. We reversed the trial court, finding that the jury was free to believe that a puncture by a needle was a "transient rub of life." *Boggavarapu,* 518 Pa. at 167, 542 A.2d at 518. Central to this holding was our observation that the question of whether the needle pierced the plaintiff's sciatic nerve was vigorously contested by both sides. We concluded that the jury chose to believe the medical testimony of the defendants and this rejection of the specific cause of the alleged pain "reduced the issue from one of obvious injury to one of subjective pain." *Id.* at 168, 542 A.2d at 518–19. Accordingly, we held that the jurors were not compelled to find pain where there was no objective injury.

Upon review of the principles set forth in *Boggavarapu,* we agree with Neison that hers was an obvious injury of the type that produces pain rather than a subjective complaint. Neison produced two medical witnesses at trial who testified that she suffered from soft tissue damage, a cervical sprain, and a herniated disk. Hines' own witness conceded that Neison had been injured when he opined that she had a healed neck sprain and a healed shoulder blade injury. Thus, the fact that Ms. Neison suffered from objective injuries was not "vigorously contested." Instead, the medical testimony of both parties established that Ms. Neison suffered from objective injuries, the defense expert only disagreeing as to their extent. These injuries suffered from a violent automobile accident are more than transient rubs of life as was the needle puncture in *Boggavarapu.* We agree with the trial court that they were injuries of the type that naturally and normally cause pain and

suffering and, accordingly, the jury was not free to disregard them.

In our view, the instant case is analogous to *Hawley v. Donahoo*, 416 Pa.Super. 469, 611 A.2d 311 (1992). There the plaintiff was involved in an automobile accident in which the defendant conceded liability and also conceded that the plaintiff suffered an compression fracture of his back. The plaintiff claimed damages for a compressed vertebra, a continuing lumbar sprain, lost wages, and lost enjoyment of life. The defendant asserted that the injury was a minor one which healed in six weeks, and that any pain the plaintiff was suffering resulted from a pre-existing condition. The only evidence introduced at trial was the testimony of the plaintiff, his wife, and his two physicians. The jury awarded no damages, and the trial court denied a request for a new trial. The Superior Court reversed, finding that, "the existence of the fractured vertebra was not questioned by the [defendant] on cross-examination, and therefore the jury's refusal to believe the existence of this injury was unwarranted." *Hawley*, 416 Pa.Super. at 473, 611 A.2d at 313. The Superior Court noted that the uncontested evidence at trial demonstrated that the defendant was negligent, and that this negligence caused a compression fracture of the plaintiff's vertebra. The court also noted that defense counsel acknowledged in his closing argument that the plaintiff experienced pain. The court concluded that the plaintiff "suffered compensable pain from a known medical source which was more than a mere transient rub of life," *id.* at 474, 611 A.2d at 314, and that the facts of the case presented "an obvious injury and compensable pain that the jury ignored." *Id.* (quoting *Boggavarapu*, 518 Pa. at 168, 542 A.2d at 519).

Like the plaintiff in *Hawley*, Ms. Neison presented unrebutted evidence that she suffered serious injuries from the automobile accident. Although Hines did not formally concede the existence of these injuries as did the defendant in *Hawley*, the medical expert presented for the defense tacitly acknowledged them when he diagnosed Ms. Neison as suffering from a "healed" back and shoulder sprain. Thus, the uncontroverted

medical evidence established that Ms. Neison suffered pain from a known medical source, a cervical sprain, fibromyalgia, and a herniated disk, much like the compression fracture in *Hawley*. We believe that these injuries are similar in type to the "obvious injury" the Superior Court found in *Hawley*, and agree with the conclusion of that court that a jury cannot freely ignore evidence of obvious injury.

We find those cases affirming a trial court's refusal to grant a new trial distinguishable. In *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984), the plaintiff was the operator of a motor vehicle struck from behind in an accident consisting of a mere "bump." At trial, Plaintiff's expert medical witnesses attributed her pain and suffering to the accident. The defendant's medical witness testified that neither he nor the plaintiff's witnesses could find any objective evidence of pain, and that the plaintiff's pain was subjective and was brought on by stress. The jury awarded no damages and the trial court refused to grant a new trial. The Superior Court affirmed the trial court's holding that "the jury rejected the testimony of the plaintiff's expert medical witness and accepted the testimony of the defendant's expert." *Holland*, 329 Pa.Super. at 474, 478 A.2d at 887.

In the instant case, Hines failed to present any adverse evidence for the jury to accept in place of Neison's expert testimony. Both parties' experts agreed that Ms. Neison suffered from an objective injury.

In *Brodhead v. Brentwood O. Iron Co., Inc.*, 435 Pa. 7, 255 A.2d 120 (1969), the plaintiff's stopped milk delivery truck was struck from behind by a steel truss being hauled on a tractor trailer as the plaintiff was getting his load ready in the rear of his vehicle. Petitioner sued, alleging that he suffered from contusions and the aggravation of a prostate condition and a vascular condition as a result of the accident. The jury returned a verdict in favor of the defendant and the trial court denied plaintiff's motion for a new trial. We upheld the trial court's conclusion that the jury must have decided that the plaintiff was not injured in the accident. We noted the "very minimal damage" to the truck, and the testimony of the

plaintiff's doctor under cross-examination that the pre-existing prostate and vascular conditions could have been aggravated by other causes or progressed naturally. The plaintiff argued that he was entitled to damages for the contusions because he presented uncontested evidence that he suffered from these injuries as a result of the accident. We rejected this argument on the basis that the plaintiff's doctor was unable to substantiate any of his statements from the records made contemporaneously with the accident, finding that the jury's disbelief of the expert opinion regarding the contusions was not "unwarranted," and that the trial court's refusal to grant a new trial was not an abuse of discretion.

Unlike *Brodhead*, Ms. Neison was involved in a serious automobile accident which severely damaged her vehicle. Also unlike *Brodhead*, Ms. Neison's doctors rejected any contention that her present injuries resulted from any prior accidents. Under these circumstances we cannot say that the jury's rejection of the medical evidence was justifiable, nor do we find an abuse of discretion in the trial court's determination that the jury's verdict was shocking. Both Ms. Neison's experts unequivocally testified that she suffered objective injuries directly attributable to her accident with Ms. Hines. Where even the medical expert produced by the defense conceded the injury, the jury's disbelief was unwarranted.

For the reasons set forth above, we do not find that the trial court abused its discretion in ordering a new trial. Accordingly, we reverse the order of the Superior Court, reinstate the order of the Court of Common Pleas, and remand for proceedings consistent with this Opinion.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.