J-A10027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KIMBERLY L. FOLINO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NATHANIEL KAULE AND MICHAEL KAULE, | |
| Appellee | No. 893 WDA 2015 |

Appeal from the Judgment Entered May 20, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-014163

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 25, 2016**

Appellant, Kimberly L. Folino, appeals from the May 20, 2015 judgment, which was entered in conjunction with the denial of her motion for post-trial relief seeking a new trial on the issue of damages. After careful review, we affirm.

The trial court adopted Appellant's summary of the facts and procedural history of this case in its Pa.R.A.P. 1925(a) opinion, as follows:

> [Appellant] filed the instant action against [Appellees], Nathaniel Kaule and Michael Kaule, alleging that Nathaniel negligently operated his father Michael's plumbing truck on August 1, 2011 when he rear-ended [Appellant], totaling her new SUV. Although not formally 'admitted,' liability was not seriously contested inasmuch as Nathaniel testified [that] he failed to bring the plumbing truck to a stop before rear-ending and totaling [Appellant's] vehicle. As such, the primary jury issue was damages, both economic and non-economic.

[Appellant] claimed various bodily injuries, the most significant of which were a herniated disc in her low back that had not resolved as of the time of trial, and a concussion that had resolved.

This matter was heard before a jury from February 3 through February 5, 2015. During the course of the trial, [Appellant] called two expert medical witnesses.

[Appellees] called no medical witnesses and, in fact, had not even requested or conducted an 'Independent Medical Examination' as permitted under Pa.R.C.P. [] 4010.

As such, the expert medical testimony regarding the ca[us]al relationship between the collision and [Appellant's] injuries was undisputed and unrebutted.

The medical evidence, stated to a reasonable degree of medical certainty, was that as the result of the accident [Appellant] suffered a disc herniation at L3-4. Notwithstanding various treatments including 2 epidural injections, [Appellant] experienced setbacks because of work related activities, especially heavy lifting, and that "for sure" [Appellant's] injuries affected her ability to do her job, as the heavy lifting component of her job would typically cause a flare up.

Dr. Reidy also testified that epidural injections do not fix herniated discs, that [Appellant's] low back injury was "chronic" and that in February 2013[,] he referred [Appellant] for pain management for the chronic disc injury, but that [Appellant] was unable to avail herself of said treatment because she could not afford [it].

Consistent therewith, [Appellant] testified that she was financially unable to start pain management treatments because the physician required an advance payment of $350.00 for the first visit.

At the close of testimony and following the instruction, the jury was given a verdict slip. This verdict slip contained 3 questions. The first question was, "Were the [Appellees] negligent?" The second question was, "Was the negligence of the [Appellees] a factual cause of any harm to [Appellant]?"

The third question was, "Itemize the amount of damages, if any, sustained by [Appellant] as a result of this accident," including

four specific damage sub-categories: (a) future medical expenses, (b) past lost earnings, (c) future lost earning capacity and (d) past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life.

The jury answered 'yes' to the first two questions, and awarded damages of $350 for future medical expenses, $4,000 for past lost earnings, $0.00 for future lost earning capacity and $3,000 for past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life.

Following the verdict, [Appellant] filed a Motion for Post-Trial Relief alleging that the verdict was inadequate as a matter of law, and that the Court should grant a new trial on the issues of damages alone.

Trial Court Opinion (TCO), 9/9/15, at 1-2 (quoting Appellant's Brief in Support of Motion for Post-Trial Relief at 1-3) (internal citations to the record omitted). The trial court denied Appellant's motion for post-trial relief by order dated May 20, 2015, and judgment was entered in favor of Appellant in the amount of $7,350.00. Appellant proceeded with the timely filing of a Notice of Appeal on June 5, 2015.

Appellant now presents the following sole issue for our review:

I. Whether [Appellant] is entitled to a new trial on damages where the jury, having accepted [Appellant's] uncontroverted expert medical testimony that [she] had sustained a herniated disc that had not healed, was chronic with continuing pain, necessitating future medical treatment, and with increased risk for future low back problems, (a) awarded a nominal amount of $350 for future medical treatment and (b) awarded $3,000 for past and future non-economic damages that are clearly against the weight of the evidence.

Appellant's Brief at v.

The standard for determining whether a verdict is inadequate so as to merit a new trial is well-settled:

- 3 -

We have held that the decision whether to grant a new trial on weight of the evidence grounds rests within the discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. Furthermore, a new trial based upon a weight of the evidence claim should be granted to a party:

> [O]nly where the verdict is so contrary to the evidence as to shock one's sense of justice and not where the evidence is conflicting or where the trial judge would have reached a different conclusion on the same facts.

> We have held that it is the duty of the trial court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court. Thus, a jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Hence, a reversal on grounds of inadequacy of the verdict is appropriate only where the injustice of the verdict stands forth like a beacon.

*Womack v. Crowley*, 877 A.2d 1279, 1282-1283 (Pa. Super. 2005)

(quoting *Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001)). Moreover,

we recognize that our scope of review is limited, especially when the trial court has refused a new trial on the ground of inadequacy:

> Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion. When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise* even greater caution in reviewing its action.

- 4 -

*Beswick v. Maguire*, 748 A.2d 701, 702 (Pa. Super. 2000) (quoting *Paustenbaugh v. Ward Baking Co.*, 97 A.2d 816, 818 (Pa. 1953)) (emphasis in *Paustenbaugh*).

Here, Appellant avers that the trial court erred in not allowing her a new trial on the issue of damages, because the verdict was so inadequate that it should have shocked the trial court's sense of justice. Appellant's Brief at 7. More specifically, Appellant states that the award of $350.00 for future medical expenses was "entirely unrealistic and totally inadequate for any reasonable course of treatment by pain management specialists…." *Id.* at 6. Appellant further avers that the award of $3,000.00 for past, present, and future non-economic damages "was totally inadequate given Dr. Reidy's uncontroverted opinions that [Appellant's] herniated disc injury had required past medical treatment including two epidural injections, was still symptomatic, was chronic, had not yet healed, and required future medical treatment, and placed her at risk for future low back problems (not to mention [Appellant's] cerebral concussion, ongoing post-concussion symptoms, chipped teeth, and other lesser injuries)." *Id.* at 6-7.

In support of her argument, Appellant asserts that this case is closely analogous to *Neison v. Hines*, 653 A.2d 634 (Pa. 1995). In *Neison*, uncontroverted evidence established that the plaintiff was involved in "a violent automobile accident" caused by the defendant, and that the defendant's negligence was the factual cause of the plaintiff's injuries, which included a cervical sprain, neck sprain, and shoulder blade sprain. The jury

awarded no damages for pain and suffering, and the trial court granted a new trial on the grounds that the award of no damages "shocked its conscience." *Id.* at 636. After the trial court's decision was reversed by this Court, our Supreme Court granted allocator and opined:

> In light of this uncontroverted evidence, we cannot find that the trial court abused its discretion in ordering a new trial. Common sense dictates that a collision of this severity caused by the negligence of another would lead to severe and painful injuries, although the evidence offered at trial left room for disagreement as to whether the pain resulting from Ms. Neison's injuries was as severe as she claimed or whether the accident was in fact causative. However, the jury's decision to find for [the defendant] and award no damages for pain and suffering bears no rational relationship to the evidence produced at trial. The jury's decision to disbelieve all the evidence presented during the trial defies common sense and is indeed shocking.

*Id.* at 638.

Appellant's heavy reliance on the **Neison** decision is misguided. As the trial court stated: "Although [Appellant's] brief points out some similarities between her case and the **Neison** case, it must be remembered that [Appellant] was awarded $3,000 in non-economic damages alone, whereas Ms. Neison was awarded nothing." TCO at 5.

Moreover, "[i]n order to determine if the verdict is inadequate we must review the entire record to determine whether an injustice has occurred." **Beswick**, 748 A.2d at 702. The record reveals that during trial, Appellant produced evidence indicating that prior to the accident, she earned average weekly wages of $1,052.52. N.T. Jury Trial, 2/3/15, at 36. Because of her injuries, Appellant stated that she was forced to miss three weeks of work

and then returned to work at a reduced rate. *Id.* Doctors informed Appellant that she was not a surgical candidate but, rather, that she should treat her back pain with physical therapy and pain medicine, or lumbar injections. *Id.* at 50-51. After receiving two lumbar injections, Dr. Reidy suggested that Appellant see a pain management doctor; however, Appellant testified that she did not go because she could not afford the $350 payment required by the pain management doctor. *Id.* at 30. Instead, Appellant has been treating her pain as needed with Aleve, Ibuprofen, and a heating pad. *Id.* at 31. The jury's award compensated Appellant for past lost earnings in the amount of $4,000, for pain and suffering in the amount of $3,000, and for future medical expenses in the amount of $350. We deem this reward to be reasonable in relation to the proven damages.

Moreover, the record reveals that in addition to her back-injuries sustained during the accident, Appellant was diagnosed with pre-existing degenerative disc disease,[1] and was treated by a homeopathic chiropractor prior to the accident.[2] A jury "is free to believe all, some, or none of the testimony presented by a witness." *Neison*, 653 A.2d at 637. "Our cases have long recognized that a jury may properly compromise claimed damages on the basis of preexisting conditions or other causes which might contribute

_____

[1] N.T. Deposition of Edward Reidy, M.D., 1/21/15, at 51-52, 54.

[2] N.T. Jury Trial at 60.

to an injury or disability so as to affect the award of damages." ***Beswick***, 748 A.2d at 705.

Finally, we note that we have previously set forth the following considerations to determine whether a verdict should be set aside as inadequate:

> (1) the verdict awarded in case indicates passion prejudice, partiality, or corruption on the part of the jury, or
>
> (2) the verdict reveals that the jury either disregarded or misapprehended the instructions by the court, or
>
> (3) the verdict awarded bears no reasonable relation to the losses sustained by the plaintiff, or
>
> (4) the verdict evidenced a failure of justice to the plaintiff, or
>
> (5) the verdict is so inadequate that it should not be permitted to stand.

***Nudelman v. Gilbride***, 647 A.2d 233, 238 (Pa. Super. 1994). The parties have conceded that the first two considerations are not relevant in this matter. Based on our thorough review of the record, we conclude that the award of $7,350 adequately reflects the damages proven by Appellant. The verdict does not evidence a failure of justice to Appellant, nor is the verdict so inadequate that it should not be permitted to stand. Moreover, despite the trial court's indication that it "would have awarded more for pain and suffering had the case proceeded non-jury," TCO at 5, this alone is not enough reason to grant a new trial. "Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or

because the reviewing court would have awarded more." **Beswick**, 748 A.2d 702.

We have carefully considered all of the evidence and are not shocked by the jury's verdict, nor are we shocked by the trial court's refusal to grant a new trial. Therefore, we affirm the court's denial of Appellant's motion for post-trial relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2016